DAVID E. MASTAGNI, ESQ. (SBN 204244)
davidm@mastagni.com
TAYLOR DAVIES-MAHAFFEY, ESQ. (SBN 327673)
tdavies-mahaffey@mastagni.com
**MASTAGNI HOLSTEDT**
*A Professional Corporation*
1912 I Street
Sacramento, California 95811-3151
Telephone: (916) 446-4692
Facsimile:  (916) 447-4614

Attorney for Plaintiffs
DAN GOLDTHORPE, JAMES DONOVAN, CHRIS BENNETT,
JAMES ISHERWOOD, AND DAVID VINCENT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO

| | |
|---|---|
| DAN GOLDTHORPE, JAMES DONOVAN, CHRIS BENNETT, JAMES ISHERWOOD, AND DAVID VINCENT, on behalf of themselves and all similarly situated individuals<br><br>Plaintiffs,<br><br>vs.<br><br>CATHAY PACIFIC AIRWAYS LTD and USA BASING LTD<br><br>Defendants. | **Case No. 3:17-cv-03233-VC**<br><br>**PLAINTIFFS' POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR INVALIDATION OF CATHAY'S SETTLEMENT RELEASES**<br><br>Hearing Date: October 5, 2023<br>Time: 10:00 am<br>Judge: Hon. Vince Chhabria<br>Ctrm: 4, 17th Floor<br><br>Complaint Filed: June 5, 2017<br>Trial Date: September 9, 2024 |

**TABLE OF CONTENTS**

I. INTRODUCTION ...........................................................................................................1

II. RELEVANT PROCEDURAL AND FACTUAL BACKGROUND ................................1

    A. Phased Litigation ................................................................................................1

    B. Defendants' Motion to Dismiss ..........................................................................2

    C. Relevant California Supreme Court and Ninth Circuit Rulings .........................2

    D. The Court's Further Rulings ...............................................................................3

    E. Defendant Makes Unilateral Settlement Offers to Putative Class Members ........4

    F. Plaintiffs' Cease and Desist Letter ......................................................................5

III. LEGAL STANDARD .....................................................................................................6

IV. ARGUMENT ..................................................................................................................7

    A. Defendants' Communications Contained Material Omissions that Prevented Putative Class Members from Making an Informed Decision Regarding the Settlement Offers. .............................................................................................7

        1. Defendants' Settlement Letters Misrepresented the Efficacy of Asserted Defenses by Concealing Material Rulings that Preclude the Defenses. ....7

        2. Defendants' Settlement Letters Omitted the Range of Possible Recovery. ....................................................................................................................9

    B. Defendants' Communications Contained Misleading Statements that Prevented the Putative Class from Making an Informed Decision Regarding the Settlement Agreement. ........................................................................................................12

        1. Defendants Misleadingly Imply that the Class May not be Certifiable...12

        2. Defendants Misrepresent Their Motives for Settlement to Create Confusion Regarding the Merits of the Claims. ......................................13

    C. Defendants' Communications Were Coercive...................................................13

        1. Defendant Imposed an Artificial Timeline to Pressure Putative Class Members and Create a False Sense of Urgency.......................................13

        2. Employer/Employee Relationship ............................................................14

    D. The Court Should Invalidate the Settlement Releases. .....................................15

V. CONCLUSION..............................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Air Transp. Ass'n of Am., Inc. v. Washington Dep't of Lab. & Indus.*,
   859 F. App'x 181 (9th Cir. 2021), cert. denied, 142 S. Ct. 2903 (2022) ...................................3

*Bernstein v. Virgin Am., Inc.*,
   3 F.4th 1127 (9th Cir. 2021), cert. denied, 142 S. Ct. 2903 (2022) .......................................3, 8

*Bower v. Bunker Hill Co.*,
   689 F.Supp. 1032 (E.D. Wash. 1985) ....................................................................................15

*Bublitz v. E.I. duPont de Nemours & Co.*,
   196 F.R.D. 545 (S.D. Iowa 2000) ..........................................................................................14

*Camp v. Alexander*,
   300 F.R.D. 617 (N.D. Cal. 2014) ......................................................................................6, 12

*Cnty. of Santa Clara v. Astra USA, Inc.*,
   No. C 05-03740 WHA, 2010 WL 2724512 (N.D. Cal. July 8, 2010) ............................ passim

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981) ...................................................................................................................6

*In re McKesson HBOC, Inc. Sec. Litig.*,
   126 F. Supp. 2d 1239 (N.D. Cal. 2000) .................................................................................13

*Jones v. Jeld-Wen, Inc.*,
   250 F.R.D. 554 (S.D. Fla. 2008) ..............................................................................................6

*Kirby v. Kindred Healthcare Operating, LLC*,
   No. 519CV00833JLSDFM, 2020 WL 4639493 (C.D. Cal. May 1, 2020) ..................... passim

*Kutzman v. Derrel's Mini Storage, Inc.*,
   354 F. Supp. 3d 1149 (E.D. Cal. 2018) ....................................................................................6

*Marino v. CACafe, Inc.*,
   No. 16-CV-6291 YGR, 2017 WL 1540717 (N.D. Cal. Apr. 28, 2017) .................................15

*Oman v. Delta Air Lines, Inc.*,
   9 Cal. 5th 762 (2020) ..................................................................................................2, 3, 8, 9

*Ontiveros v. Safelite Fulfillment, Inc.*,
   No. CV157118DMGRAOX, 2017 WL 6043078 (C.D. Cal. Oct. 16, 2017) ...........................9

*Stafford v. Brink's, Inc.*,
   No. CV 14-1352-MWF(PLAX), 2015 WL 12912324 (C.D. Cal. Aug. 14, 2015) ..................9

*Vidrio v. United Airlines, Inc.*,
   Case No. 17-55471 ...................................................................................................................3

*Ward v. United Airlines, Inc.*,
   9 Cal. 5th 732 (2020) ..................................................................................................2, 3, 8, 9

*Ward v. United Airlines, Inc.,*
  986 F.3d 1234 (9th Cir. 2021) ......................................................................................3, 8

*Wilson v. SkyWest Airlines, Inc.,*
  *No*. 19-CV-01491-VC, 2021 WL 2913656, (N.D. Cal. July 12, 2021) ................................3, 8

**Rules**

Fed. Rules Civ. Proc. 23(d)(1) ...................................................................................................6

**Other Authorities**

3 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 9:7 (6th ed. 2023) .....10

## I. INTRODUCTION

Defendants procured approximately fifty-seven settlement releases from putative class members through misleading assertions which concealed information which was necessary and relevant to consider the offers. Defendants advised class members that defenses which had already been discredited by this Court, the Ninth Circuit Court of Appeals, and the California Supreme Court would likely bar any recovery, while omitting any references to those adverse rulings. Defendants asserted that class certification was unlikely and could limit recovery to the named Plaintiffs only without disclosing the phased litigation process. Defendants failed to provide any meaningful information as to how the claims were valued or the offers calculated, despite repeated requests for more information. Finally, an artificial eleven-day deadline pressured recipients into making an uninformed decision.

Defendants' misleading assertions and concealment of relevant information are a tacit acknowledgement that the putative class members who settled their claims would not have done so if provided accurate information to make an independent and informed decision. Therefore, this Court should invalidate any executed settlement releases and allow those class members to participate in this class action without having to repay any monies received.

## II. RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

### A. Phased Litigation

On June 5, 2017, Plaintiffs filed this class action lawsuit seeking unpaid overtime wages, minimum wages, meal period and rest break payments, waiting time penalties, and other penalties. (Dkt. No. 1.) On January 4, 2018, the parties filed a Joint Case Management Statement. Plaintiffs requested the Court move forward with both class certification and the merits of the case. (Dkt. No. 47, p. 13:24-26.) Defendants requested that "the Court (i) allow Defendants to file an early summary judgment motion; and (ii) in connection with that motion, allow the parties to conduct limited discovery aimed at addressing plaintiffs' claims, with subsequent discovery on class certification and other issues deferred until after the Court issues a ruling on that summary judgment motion." (Dkt. No. 47, p. 15:7-11.) The January 10, 2018, Scheduling Order adopted Defendants preference to proceed with phased litigation, beginning

1  with liability as to the named Plaintiffs. (Dkt. 50.) This Court's Standing Order for Civil Cases
2  recognizes that this approach "will often save a great deal of time and money," but also that "a
3  grant of summary judgment in the named plaintiff's favor could end up giving unnamed class
4  members a chance to opt in to a lawsuit where a legal issue has already been decided against the
5  defendant." (Standing Order for Civil Cases Before Judge Vince Chhabria ¶ 50.)

### B. Defendants' Motion to Dismiss

On October 2, 2017, Defendants filed a motion to dismiss ("MTD") Plaintiffs' Complaint in its entirety based. (Dkt. No. 23.) The MTD argued the California Labor Code does not apply to Plaintiffs' work activities performed outside of California. (*Id.* at p. 7:3-11:10.) The MTD also argued that Plaintiffs' wage claims and meal/rest period claims were preempted by the Railway Labor Act ("RLA") while a collective bargaining agreement was in place. (*Id.* at p. 13:9- 17:9.) Defendants argued Plaintiffs' unpaid overtime, reporting time, and recordkeeping violation claims were exempted by Wage Order 9 and the RLA. (*Id.* at p. 17:10-19:1.)

On January 8 and January 16, 2018, this Court issued two separate Orders granting in part and denying in part Defendants' MTD. (Dkt. No. 48, 51.) This Court denied the majority of Defendants' MTD, while granting dismissal on some of the ancillary claims. The Court found that because "the plaintiffs are based in California, the nature of their work prevents them from being in one location for the majority of their working hours, and they perform more work in California than anywhere else," California law applies. (Dkt. No. 48, p. 4-5.) Similarly, the Court found that the RLA did not bar Plaintiffs' meal and rest break claims. (Dkt. No. 51 ¶¶ 1, 7.) The Court did grant Defendants' motion as to ancillary claims for violation of Labor Code sections 204, 221-223, and 432.5. (*Id.* at ¶¶ 2, 3, 5.) Finally, the Court denied the motion to dismiss as to Plaintiffs' First, Fifth, Tenth, and Eleventh Causes of Action as to claims through August 31, 2016. (*Id.* at ¶ 6.)

### C. Relevant California Supreme Court and Ninth Circuit Rulings

On May 21, 2018, the Court stayed this case pending the California Supreme Court's answer to the questions certified by the Ninth Circuit in *Ward v. United Airlines, Inc.,* 9 Cal. 5th 732 (2020), *Oman v. Delta Air Lines, Inc.,* 9 Cal. 5th 762 (2020), and *Vidrio v. United Airlines,*

*Inc.*, Case No. 17-55471. (Dkt. No. 73.) On June 29, 2020, the California Supreme Court held that Labor Code section 226's wage statement requirements apply "if the employee works a majority of the time in California or, for interstate transportation workers whose work is not primarily performed in any single state, if the worker has his or her base of work operations in California." *Ward,* 9 Cal.5th at 761. In *Oman*, the Court reiterated that "if employees are based for work purposes in California, that is sufficient to trigger the requirements of section 226, regardless of where their employer resides." *Oman*, 9 Cal. 5th at 773. On July 13, 2020, the parties filed a Joint Status Report regarding the impact of these decisions on this action. (Dkt. No. 75.) On September 2, 2020, the Court lifted the stay. (Dkt. No. 83.)

With the certified questions answered, *Ward* and *Oman* were sent back to the Ninth Circuit. On February 2, 2021, the Ninth Circuit held in *Ward v. United Airlines, Inc.,* 986 F.3d 1234, 1242 (9th Cir. 2021) that Labor Code section 226 wage statement claims were not preempted by Airline Deregulation Act ("ADA") nor by the RLA. In *Bernstein v. Virgin Am., Inc.*, 3 F.4th 1127 (9th Cir. 2021), cert. denied, 142 S. Ct. 2903 (2022), the Ninth Circuit found, based on the reasoning in *Ward* and *Oman*, that a variety of California wage and hour laws apply to California-based airline workers including laws governing minimum wage (Lab. Code § 1182.12(a) & § 204), overtime (§ 510), meal and rest breaks (§ 512), and waiting time penalties (§§ 201-203). The court also found that neither the Federal Aviation Act ("FAA") or the ADA preempt California's meal and rest break statutes. *Id.* at 1138.

These rulings were reaffirmed by the Ninth Circuit in *Air Transp. Ass'n of Am., Inc. v. Washington Dep't of Lab. & Indus.*, 859 F. App'x 181 (9th Cir. 2021), cert. denied, 142 S. Ct. 2903 (2022), and by multiple district courts, including this Court in *Wilson v. SkyWest Airlines, Inc., No*. 19-CV-01491-VC, 2021 WL 2913656, at *1 (N.D. Cal. July 12, 2021).

**D. The Court's Further Rulings**

On October 7, 2020, the parties entered a stipulation modifying the Court's Order on the MTD to reflect that Plaintiffs' section 226 wage statement claims were not preempted by the RLA in light of *Ward.* (Dkt. Nos. 93, 94.) Effective January 1, 2020, California created a new private right of action under Labor Code section 210 permitting individuals to seek penalties for

late payment of wages. As a result, the parties' stipulated to modify the Court's Order on the MTD to reflect that Plaintiffs' claims under sections 204 and 210 were viable as of January 1, 2020. (Dkt. Nos. 105, 106.)

On July 14, 2021, Defendants informed the Court that they would be bringing a Motion for Partial Summary Judgment ("MSJ") on the learned professional and preemption issues. (Dkt. No. 115-1.) However, on September 22, 2022, Defendants filed their MSJ, which did not raise arguments regarding the applicability of California laws or federal preemption. (Dkt. Nos. 126-0, 126-1, 144, 144-1.) Plaintiffs filed a cross MSJ on February 1, 2023. (Dkt. No. 147.) On April 3, 2023, the Court granted Plaintiffs' motion and denied Defendants' motion. (Dkt. No. 178.)

**E. Defendant Makes Unilateral Settlement Offers to Putative Class Members**

On January 27, 2023, Defendants sent a letter, a settlement agreement and release, and a copy of the Complaint by email to the putative class members in an attempt to enter into pre-certification settlement agreements with as many of the putative class members as possible. (Declaration of Bern Mueller ("Mueller Decl.") ¶ 8, Exh. A; Declaration of James Gillespie ("Gillespie Decl.") ¶ 8.) Defendants cover letter stated, "Cathay strongly denies the claims in the Goldthorpe Lawsuit. The Court has already dismissed some of the claims in the lawsuit." (Mueller Decl. Exh. A, p. 3.) The letter continues, "[w]ith regard to the remaining claims, Cathay contends that California law does not apply to California-based pilots because … federal laws focusing on aviation safety pre-empt California law." (*Id.* p. 4.) Without disclosing that Defendants requested phased litigation, the letter asserts "Cathay also contends that the Goldthorpe Lawsuit should not proceed as a class action" and potentially "the case would then only proceed on behalf of Goldthorpe and the other named plaintiffs, but not you, and you would receive nothing." (*Id.*)

The letters offered individualized settlement amounts purportedly "calculated to ensure fairness based on: 1) each pilot's last compensation rate paid on the USA base for current and former pilots; and 2) the amount of time that a pilot or former pilot was employed by Cathay between June 5, 2013 and October 31, 2022." (*Id.*) However, the letter provides no information as to how the amounts were actually calculated or the class members' range of recovery.

The putative class members were given eleven days to sign the agreement. (Mueller Decl. ¶ 13, Exh. A, p. 5; Gillespie Decl. ¶ 13.) At the time the email was sent to putative class members in January of 2023, at least some of the putative class members were still employed by Defendants. In at least one case, Defendants did not allow a putative class member to withdraw their acceptance of the settlement. On February 9, 2023, putative class member Bern Mueller attempted to rescind his February 5, 2023, acceptance of the settlement after discovering the California Supreme Court had ruled that California's wage and hour protections applied to pilots home-based in California. (Mueller Decl. ¶¶ 28-31, Exh. D.) Mr. Mueller felt that Cathay had intentionally misled him in order to induce him to settle his claims for less than he would have accepted had he been better informed. (Mueller Decl. ¶¶ 27, 32.) Defendants informed Mueller on February 12, 2023, that his rescission was deemed "ineffective." (Mueller Decl. Exh. D.)

**F. Plaintiffs' Cease and Desist Letter**

After reviewing the settlement agreements, more than eighty of the putative class members contacted Plaintiffs' counsel regarding the class action lawsuit and the settlement agreements that they had received. (Declaration of David E. Mastagni ("Mastagni Decl.") ¶ 2.) On January 30, 2023, Plaintiffs' attorneys sent Defendants a Meet and Confer over Demand to Cease and Desist Pre-certification Settlement Solicitations letter. (Mastagni Decl. ¶ 3, Exh. A.) The letter demanded that "Cathay cease and desist from issuing settlement offers to absent members of the putative class, withdraw all outstanding offers, and cancel the scheduled zoom meetings." (Mastagni Decl. Exh. A, p. 3.) Further, the letter emphasized that Defendants' cover letter was highly misleading because it included a number of inaccuracies and material omissions which prevented the class members from making an informed decision about whether to accept or reject the settlement offer.

Nevertheless, Defendants proceeded with their scheduled meetings to persuade absent class members to settle their claims individually.  The information presented at these meetings repeated false and misleading information contained in the letters. (Mueller Decl. ¶¶ 17-21; Gillespie Decl. ¶ 20.) Cathay executed settlement agreements with approximately 57 putative class members. (Mastagni Decl. ¶ 14, Exh. I.)

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 23(d)(1) grants the court authority to issue orders in a class action that "impose conditions on the representative parties or on intervenors" and "deal with similar procedural matters."  In *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), the United States Supreme Court explained the court's broad authority in exercising control over a class action and limiting communications between the parties and potential class members:

> Class actions serve an important function in our system of civil justice. They present, however, opportunities for abuse as well as problems for courts and counsel in the management of cases. Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties. But this discretion is not unlimited, and indeed is bounded by the relevant provisions of the Federal Rules. *Id.* at 99-100.

"[W]hile the Ninth Circuit had not yet adopted a standard to determine what constitutes a false or misleading offer to settle, 'surely that test is concomitant with the potential for abuse in the communications, including being misled about the strength and extent of their claims. The putative class members can be misled through omissions and failure to provide enough information.'" *Camp v. Alexander*, 300 F.R.D. 617, 624 (N.D. Cal. 2014) (quoting *Cnty. of Santa Clara v. Astra USA, Inc.,* No. C 05-03740 WHA, 2010 WL 2724512, at * 3 (N.D. Cal. July 8, 2010) ("*Santa Clara*").) "Determining whether the conduct at issue is misleading, coercive, or otherwise unfair 'generally entails parsing the specific communications, as well as the party's relationship to the putative class members.'" *Kirby v. Kindred Healthcare Operating, LLC*, No. 519CV00833JLSDFM, 2020 WL 4639493, at *3 (C.D. Cal. May 1, 2020) (quoting *Kutzman v. Derrel's Mini Storage, Inc*., 354 F. Supp. 3d 1149, 1155 (E.D. Cal. 2018).) "Communications that have been found to be violative of the principles of Rule 23 include misleading communications to class members regarding the litigation, communications that misrepresent the status or effect of the pending action, communications that coerce prospective class members into excluding themselves from the litigation, and communications that undermine cooperation with or confidence in class counsel." *Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554, 561 (S.D. Fla. 2008). Settlement offers failing to include "any information about how that amount might compare to the value of [putative class members'] claims" are misleading because

they prevent putative class members from making "an informed decision about whether to accept or reject the settlement offer." *Kirby,* 2020 WL 4639493, at *4.

## IV.   ARGUMENT

Defendants' letter and settlement offers omitted critical information, including relevant rulings obviating their asserted defenses and basic information about the calculation of the offered amounts. Defendants purposefully sent these communications at a time when they could avoid judicial scrutiny. By providing a misleading assessment of the strength of their case and the size of the possible payout, Defendants intended to cause putative class members to devalue their claims and accept an unfair settlement agreement under artificial time pressure.

**A. Defendants' Communications Contained Material Omissions that Prevented Putative Class Members from Making an Informed Decision Regarding the Settlement Offers.**

**1. Defendants' Settlement Letters Misrepresented the Efficacy of Asserted Defenses by Concealing Material Rulings that Preclude the Defenses.**

Defendants intentionally misled putative class members by raising repudiated defenses as potential bars on any recovery in order to induce the recipients to accept their undervalued offers. First, the letters falsely portrayed Defendants' defeated contention that California law does not apply to Plaintiffs and other similarly situated pilots as viable while concealing material information to the contrary, including the Court's MTD ruling and rulings from the Ninth Circuit and the California Supreme Court confirming this Court's determination. Defendant asserted, "Cathay strongly denies the claims in the Goldthorpe Lawsuit. … Cathay contends that California law does not apply to California-based pilots because they work primarily outside of the state of California, because federal laws focusing on aviation safety pre-empt California law." (Mueller Decl. Exh. A, p. 4.)

These misrepresentations and omissions misled the recipients about the strength of their claims, deprived them of necessary information to determine whether to accept the settlement offers, and frustrated the purpose of Rule 23. Defendants omitted that on January 8, 2018, this Court ruled "there is no categorical rule that California's wage and hour protections can only apply if most of an employee's work is performed within the state, and the presumption against

extraterritorial application does not prevent the application of California wage and hour law to transportation workers *based* in California who travel interstate." (Dkt. No. 48, p. 4 [emphasis added].) The letter further omitted that on June 29, 2020, the California Supreme Court issued its rulings in *Ward,* 9 Cal. 5th 732, and *Oman,* 9 Cal. 5th 762, which both confirmed this Court's ruling and foreclosed any further appellate review of the issue.

Defendants' letter misleadingly claimed that "federal laws focusing on aviation safety pre-empt California law." (Mueller Decl. Exh. A, p. 4.) Defendants omitted that on February 2, 2021, the Ninth Circuit issued its ruling in *Ward,* 986 F.3d 1234, holding the ADA does not preclude California from applying its wage laws to airline workers, and that on March 8, 2021, the Ninth Circuit issued its amended ruling in *Berstein,* 990 F.3d 1157, holding the FAA does not preclude California from applying its wage laws.

On July 14, 2021, the Court advised Defendants that given this binding precedent, as well as the Court's own ruling in *Wilson v. SkyWest Airlines, Inc.,* 2021 WL 2913656, "it's not worth teeing up a summary-judgment motion on preemption," but Defendants stated they wished to do so. (Dtk. No. 115-1, p. 4:20-5:19.) On November 24, 2021, Defendants obtained an Order confirming the Court authorized Defendants to raise preemption in their MSJ. (Dtk. No. 116.) Given the lack of merit in this defense, Defendants ultimately decided not to seek summary judgment on the preemption issue in their September 22, 2022 MSJ. (Dtk. Nos. 126 and 144.) Despite abandoning that defense, Defendants intentionally misled the putative class members that this defense was a viable bar on any recovery. This deceit heightened the pressure to accept the settlement within the eleven days.

This District has invalidated releases under strikingly similar circumstances, wherein settlement letters concealed relevant appellant rulings. *Santa Clara*, 2010 WL 2724512, at *4. In *Santa Clara,* the defendant, a pharmaceutical company, sent putative class members a cover letter and check purporting to settle and release any claims for overcharged drugs. *Id.* The defendant omitted that "the court of appeals had already vetted and approved the theory of the case, an important factor in examining the strength of a claim." *Id.* at *4*; see also, Stafford v. Brink's, Inc.*, No. CV 14-1352-MWF(PLAX), 2015 WL 12912324, at *4 (C.D. Cal. Aug. 14,

2015).   The court found that "limited intervention is warranted to protect the putative class members from misleading information," and that the letter omitting material information was "inadequate to inform the putative class." *Id.* at *3-4.

Similarly, courts have invalidated releases based on the omission of the trial court's prior rulings on matters relevant to liability. *Stafford* held that even accurate statements of the defendant's position on certain claims were "misleading" where "the letters omit a discussion of the Court's orders in this case so far." *Stafford*, 2015 WL 12912324, at *4.  In *Ontiveros v. Safelite Fulfillment, Inc.*, No. CV157118DMGRAOX, 2017 WL 6043078, fn. 6 (C.D. Cal. Oct. 16, 2017), the court held that the omission of "rulings on pretrial motions…can also prevent employees from intelligently deciding whether to release their claim."

Here, Defendants' concealments went much further. Not only did Defendants fail to disclose prior rulings from this Court and the appellate courts, but the letters affirmatively misrepresented that asserted defenses were viable, despite knowing the defenses were precluded by binding precedent and prior rulings. Defendants also omitted the Court's Order regarding phased litigation when suggesting the class certification could be denied. (Dkt. No. 50.) Taken as a whole, Defendants' communications failed to "provide enough information so that the recipients would not be misled about the strength or extent of the claims." *Id.* at *5.  Defendants failed to disclose rulings adverse to its defenses to mislead putative class members into believing they would likely receive nothing unless they accepted Defendants' time sensitive offer. Defendants knew that these defenses had been discredited because they filed a Joint Status Report regarding the holdings in *Ward* and *Oman* on July 13, 2020, and they did not include these defenses in their MSJ filed on October 20, 2022. (Dkt. Nos. 75, 126-0, 126-1, 144, 144-1.) The concealment of binding precedent precluding asserted defenses warrants invalidating the releases obtained in response to these letters.

### 2. Defendants' Settlement Letters Omitted the Range of Possible Recovery.

The executed releases should also be invalidated because Defendants failed to provide any information about how the settlement offers compared to the potential value of putative class members' claims.  Communications "that fail to convey the necessary context to allow

potential class members to make informed decisions between individual and collective litigation" are deemed misleading. 3 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 9:7 (6th ed. 2023).

Defendants' settlement letters were particularly misleading in professing that the offers "have been calculated to ensure fairness," but actually providing no information to explain the difference between the amounts offered and the potential amounts that could be recovered in the class action. (Mueller Decl. Exh. A, p. 4; Declaration of Lance Petrack-Zunich ("Petrack-Zunich Decl.") ¶ 19.) The letters did not contain any information about the range of recovery in the litigation and failed to disclose the calculation methodology for the offers. The only information provided was a vague assertion that the offers were based on putative class members' compensation rate and amount of time employed by Cathay between June 5, 2013 and October 31, 2022. (Mueller Decl. Exh. A, p. 4-5.) However, no information was given as to how the various claims in the action were valued or discounted, or which were excluded altogether. Despite this omission, the releases covered all current and future claims against Defendants whatsoever, including but not limited to an enumerated list of the claims in this action. (Mueller Decl. Exh C, p. 3-5; Gillespie Decl. Exh. A, p. 3-5.)

Many putative class members were understandably uncomfortable with the lack of information, and Defendants received a number of emails requesting more information about how the offers were calculated. (Mastagni Decl. Exhs. D-H.) Defendants provided a canned answer:

> The Company wanted to be fair, so it looked at each employee's length of employment on the California base during the relevant claim period and base salary. The claim periods for each claim are different and have different weights attached to the (all claims are not equal). The longer you were employed with exposure to each claim, the higher the weighting of those claims and the higher your wage rate, the more you are being offered. (Petrack-Zunich Decl. ¶ 23, Exh. A, p. 2.)

Defendants failed to give a meaningful explanation of which claims were discounted or what formula was used. Putative class member Lance Petrack-Zunich informed Cathay that the above explanation "still does not indicate how the settlement offer was calculated to me in a fair and transparent manner," and that he "need[ed] more detailed and transparent information of the

calculations before [he could] make any decisions with respect to acceptance." (Petrack-Zunich Decl. ¶ 25, Exh. A, p. 1-2.)  Despite Mr. Petrack-Zunich's multiple attempts to gain information on the method used to determine his settlement amount, Cathay failed to provide him with useful information about the calculations or range of recovery, and instead essentially asked him to trust them that the formula and methodology used was fair and accurate. (Petrack-Zunich Decl. ¶¶ 19-27; Exhs. A, B.)

Courts have consistently found similar omissions misleading and grounds to invalidate releases. In *Santa Clara*, the court explained that while an offer may be based on a disputed calculation methodology, the putative class members must still be fully informed as to how the offered payments were calculated to be able to decide whether to accept the settlement offer. *Santa Clara*, 2010 WL 2724512, at *4. There, the court found the offers misleading because they did not explain the difference between the amounts offered and the potential amounts that could have been recovered in the class action. *Id.*  Similarly, in *Kirby*, the court held settlement offers that omitted "any information about how that amount might compare to the value of [putative class members'] claims" were misleading because the failure to disclose that information prevented putative class members from making "an informed decision about whether to accept or reject the settlement offer." *Kirby*, 2020 WL 4639493, at *4.

In *Santa Clara*, the court held that the defendant "should have explained the specific claims that plaintiffs allege against [defendant], precisely how the new components were calculated, and how closely the new calculations aligned with plaintiffs' allegations." *Santa Clara*, 2010 WL 2724512, at *4. The court stated that this was "necessary information to choose whether to accept the settlement checks." *Id.* Here, Defendants provided no information regarding the value allocated to each claim or the formula used to calculate the offer. Defendants' letters merely list each of the claims in the Complaint, then state that Plaintiffs "seek actual damages and statutory penalties for these alleged violations." (Mueller Decl. Exh. A, p. 3.) No information is provided as to whether any value is given to any given claim or penalty.  The totality of information provided appears intended to confuse and mislead the putative class members to believe that all their claims have been fairly valued without actually

providing any meaningful information to evaluate their individual offers against the value of their claims.

**B. Defendants' Communications Contained Misleading Statements that Prevented the Putative Class from Making an Informed Decision Regarding the Settlement Agreement.**

    **1. <u>Defendants Misleadingly Imply that the Class May not be Certifiable.</u>**

Courts in this Circuit have also invalidated releases based upon misleading statements about the status and likelihood of class certification that are similar to Defendants' representations. For example, *Kirby* held that a statement that "the Lawsuit has not been 'certified' as a class action" was likely to be misunderstood by a nonlawyer. *Kirby,* 2020 WL 4639493, at *4. The *Kirby* court found such statements were "[a] slanted characterization, this description is incomplete and all but encourages putative class members not to join the class." *Id*.; see also, *Santa Clara*, 2010 WL 2724512, at *4 (finding representations "that the class certification was denied, but could be renewed" to be misleading without additional information regarding the status of the case).

Similarly, Defendants' letter stated, "the court has not yet determined whether the lawsuit is qualified to proceed as a class action" and warned that the putative class members could receive nothing if the Court sided with Defendants. (Mueller Decl. Exh. A, p. 4.) Defendants went even further advising, "Cathay also contends that the Goldthorpe Lawsuit should not proceed as a class action and that Goldthorpe and the other named plaintiffs are not proper class representatives in that action" and "if the court determines that the suit cannot proceed as a class action or that Goldthorpe and the other named plaintiffs cannot represent you … you would receive nothing." (Mueller Decl. Exh. A, p. 4.)

Here, Defendants' purported contentions are also highly misleading given the prior rulings and the posture of the case. Simply stating "we believe" or "contend" at the beginning of a coercive statement, such as Defendants' exaggerations of its the likelihood of defeating certification and denying any recovery to the putative class members, does not immunize the assertions. *Camp v. Alexander*, 300 F.R.D. 617, 624 (N.D. Cal. 2014).

Defendants also failed to disclose that the Court granted their proposal to litigate the

merits of the named Plaintiffs' claims prior to class certification over the Plaintiffs' objections. (Dkt. No. 47, p. 15:7-11; Dkt. No. 50.) Defendants omitted that this approach is predicated on a recognition that the class certification will likely be granted and the class claims governed by the outcome of the named Plaintiffs' claims. (*See* Standing Order for Civil Cases Before Judge Vince Chhabria ¶ 50 (stating that under this approach "a grant of summary judgment in the named plaintiff's favor could end up giving unnamed class members a chance to opt in to a lawsuit where a legal issue has already been decided against the defendant.").)

### 2. Defendants Misrepresent Their Motives for Settlement to Create Confusion Regarding the Merits of the Claims.

Defendants' letter misrepresents their motives for settling the case to mislead the putative class members regarding the actual value of their claims. Defendants' letter professes that the offers are not based on the value or merits of Plaintiffs' claims, but rather because "litigation is a costly proposition, particularly in terms of the time, energy and attorney fees Cathay has to pay to defend the litigation" and so the offer was made "to reduce litigation costs." (Mueller Decl. Exh. A, p. 4.) While the settlement amounts may seem large in this context, the offers are dwarfed by the recovery available in litigation.

These representations are also belied by the fact that settling with only a portion of the putative class does not appreciably reduce its litigation costs. Given that the claims of the named Plaintiffs were to be litigated first, Defendant would not appreciably reduce litigation costs unless it first prevailed against the named Plaintiffs. Even assuming the offers were made in anticipation of Defendants losing their MSJ, reducing the size of the class would not avoid trial. Thus, these statements appear calculated to further confuse the putative class members and induce them to settle based on misleading information.

### C. Defendants' Communications Were Coercive.

#### 1. Defendant Imposed an Artificial Timeline to Pressure Putative Class Members and Create a False Sense of Urgency.

Defendants' short timeline pressured putative class members into signing the settlement without adequately researching the case or speaking with an attorney. In *In re McKesson HBOC,*

*Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1245 (N.D. Cal. 2000), the court found solicitation materials that created a false sense of urgency to be misleading and possibly intentionally deceptive. Here, Defendants allowed the putative class members only eleven days to determine whether or not to accept the settlement offer. There are hundreds of filings in this case with thousands of pages. The case had been ongoing for over five years. Eleven days is not nearly enough time for any person to make an educated assessment of the strengths and weaknesses of the parties' claims. Moreover, no time constraints existed that warranted such a short timeline.

At least two putative class members wanted more time to research the case but signed the agreement without requesting more time. After realizing that he should have asked for more time, Bern Mueller sent a request to Defendants requesting that he be allowed to rescind his settlement release as he wanted more time to consider the offer. (Mueller Decl. ¶¶ 28-31; Exh. D.) Defendants' response was unapologetic in their denial claiming that he was given all the information he needed and plenty of time. (*Id.*) Similarly, Defendants received at least one other complaint from an individual after he had signed that he had felt rushed and confused by the process. (Mastagni Decl. Exh. D, p. 2.) Defendants' artificial time constraint is a common high-pressure sales tactic used to pressure class members to sign for fear that if they don't accept the settlement by the deadline, they will receive nothing. After five years of litigation, Defendants can offer no legitimate justification for imposing an eleven-day deadline on its out of court settlement offers.

### 2. Employer/Employee Relationship

In *Bublitz v. E.I. duPont de Nemours & Co.*, 196 F.R.D. 545 (S.D. Iowa 2000), the court acknowledged the potential inherent coercion in communications between a party and the putative class when the party is the employer and stated as follows:

> Where the defendant is the current employer of putative class members who are at-will employees, the risk of coercion is particularly high; indeed, there may in fact be some inherent coercion in such a situation. *Id.* at 548.

At the time of this offer, the putative class members were likely a mix of both employees and former employees of Defendants. Any putative class members that were current at-will employees of Defendants at the time they received the settlement offers, knew that Defendants

would know whether or not they accepted the offer. The potential fear of reprisal is enough to coerce some employees into signing an agreement that they would not have otherwise done. *See Bower v. Bunker Hill Co.*, 689 F.Supp. 1032, 1033 (E.D. Wash. 1985) (recognizing the "extreme potential for prejudice to class members' rights".)

### D. The Court Should Invalidate the Settlement Releases.

Ninth Circuit district courts have invalidated settlement releases to remedy "inadequacies and omissions [that] combine to render Defendants' communications with putative class members misleading." *Kirby,* 2020 WL 4639493, at *4. This Court should adopt *Kirby's* ruling that, "[a]ny amount already paid pursuant to a later-voided agreement may be treated as an offset to any other recovery by the putative class member." *Id.* at * 5. The courts in *Santa Clara* and *Marino* are in accord in ordering same remedy of invalidating the releases while allowing class members retain any amounts received. *Santa Clara,* 2010 WL 2724512, at *6; *Marino v. CACafe, Inc.*, No. 16-CV-6291 YGR, 2017 WL 1540717, at *2-3 (N.D. Cal. Apr. 28, 2017).

Here, invalidating the releases is appropriate given the totality of Defendants' misleading statements and concealment of material information. Because the settlement amounts paid were in excess of two million dollars, any requirement to repay monies already received will effectively preclude most of the misled class members from participating in the action, particularly given the potential tax implications. Given Defendants' culpability in creating this situation, the putative class members should not have any additional burden imposed upon them.

### V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant this motion.

Respectfully Submitted,

Dated: August 24, 2023                                    **MASTAGNI HOLSTEDT, A.P.C.**

/s/ David E. Mastagni
By:
DAVID E. MASTAGNI
TAYLOR DAVIES-MAHAFFEY
Attorneys for Plaintiffs